J-S13023-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RASHAUN LEATHERBERY | |
| Appellant | No. 572 EDA 2016 |

Appeal from the Judgment of Sentence January 8, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0013503-2014

BEFORE:  BENDER, P.J.E., LAZARUS, J., and FITZGERALD, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED MARCH 10, 2017**

Rashaun Leatherbery appeals from the judgment of sentence, entered in the Court of Common Pleas of Philadelphia County, after he was convicted of aggravated assault,[1] simple assault[2] and conspiracy.[3]   After careful review, we affirm.

The trial court aptly summarizes the underlying facts of the case as follows:

> Jimmie Grant, the victim in this matter, and Kuwsh Muhammad were friends, occasionally recording music together.  On March

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 2702(a)(1).

[2] 18 Pa.C.S. § 2701(a).

[3] 18 Pa.C.S. § 903.

14, 2014, Muhammad picked Grant up to drive to a recording studio. On their way, Muhammad stopped at 60th and Master Streets in Philadelphia, exited the car, and entered a store while Grant remained in the passenger seat. Moments later, Grant saw Muhammad walking out of the store and two men, later identified as defendants Rashaun Leatherbery and Imir Glover, walking behind Muhammad. Grant, sensing trouble, stepped out of the passenger side of the car, at which time the three men approached Grant, with Leatherbery inquiring about another man, Mike Glover. After a brief dispute, Leatherbery punched Grant and continued to strike him. Suddenly other men joined in, and at least one slammed Grant to the ground. Grant was repeatedly punched and kicked, testifying that he fell in and out of consciousness. Security footage obtained from a nearby store showed a total of five men in the area around Grant for about three minutes.[4]

At trial, Grant recalled that Muhammad pulled him off the ground, brought him home, then eventually to the hospital. Grant was released from the hospital two days later after suffering two broken ribs, losing multiple teeth, and receiving stitches in his head and mouth. He also testified that his phone and about $70 were taken from his pockets and never recovered.

Trial Court Opinion, 7/14/16, at 3 (citations to record omitted). On October 30, 2014, Leatherbery, Glover and Muhammad were arrested and charged with aggravated assault and simple assault as well as criminal conspiracy. After a preliminary hearing, the three men were bound over for trial on all charges.

Leatherbery filed a pre-trial motion to suppress the victim's out-of-court and in-court identifications based on the allegation that the

---

[4] The video footage, however, did not provide an independent basis for identifying any of the perpetrators other than Muhammad. N.T. Non-Jury Trial, 10/26/15, at 46.

identifications were suggestive and that there had been no reliable identification made because the witness was tainted. N.T. Suppression Motion, 10/24/15, at 4-5. The court held a hearing on the motion where Detective Greg Holman was the sole witness. Detective Holman testified that the victim described his assailant as "being six-foot-one, 180 to 200 pounds, light complexion, Sunni beard, with short wavy hair." *Id.* at 12. Four days after the assault, the victim was interviewed by Detective Holman. Holman testified that the victim told him he knew one of his assailants by the nickname, "Shaun T," and that he was a relative of Mike Glover, but had never personally met him prior to the incident. At that point, Holman looked up information on Mike Glover that indicated he had been a co-defendant of Leatherbery on several occasions. When the detective pulled up a photo of Leatherbery, the victim immediately identified him as "Shaun T," one of his assailants. The court found the detective's testimony credible and denied the motion.

Leatherbery waived a jury trial. Trial took place on October 26, 2015, before the Honorable J. Scott O'Keefe. The Commonwealth did not present the victim's out-of-court identification at trial. Leatherbery was convicted of the above-stated offenses; his co-defendants were acquitted. On January 8, 2016, Leatherbery was sentenced to 2-3 years in prison, followed by 5 years of probation. This timely appeal follows.

On appeal, Leatherbery raises the following issues for our consideration:

(1)   Was the evidence insufficient to convict [Leatherbery] of all the offenses because there was no evidence of showing beyond a reasonable doubt that [Leatherbery] was the perpetrator of the offense?

(2)   Did the trial court err in denying the defense['s] motion to suppress the identification of [Leatherbery] by the complainant because of [the] police['s] unduly suggestive identification procedures at a photo display when the Commonwealth did not meet its burden of establishing by clear and convincing evidence . . . that the complainant's trial testimony was reliably based on the complainant's observation at the time of the crime?

Appellant's Brief at 2.

Leatherbery asserts that the complainant's identification testimony is insufficient to sustain his convictions where the attack occurred at night, the complainant lost consciousness at some point during the attack, the victim had never met Leatherbery before and was under the influence of drugs at the time of the crime, there was no motive for Leatherbery' s actions, and there was no physical or circumstantial evidence linking Leatherbery to the crime.

The identity of a defendant must be proven beyond a reasonable doubt, the same as any other essential element in a criminal prosecution. *Commonwealth v. Shelbert*, 171 A.2d 574, 576 (Pa. Super. 1961). However, a weak identification, together with other evidence in a case, may be sufficient to convince a jury of the defendant's guilt beyond a reasonable doubt. *Id.* Evidence of identification need not be positive and certain to sustain a conviction. *Commonwealth v. Woodbury*, 477 A.2d 890, 893 (Pa. Super. 1984). Moreover, any indefiniteness and uncertainty in

identification testimony goes to the weight and credibility of his or her testimony. **Commonwealth v. Washington**, 927 A.2d 586 (Pa. 2007).

Although the victim may never have personally met Leatherbery before the assault, the victim knew Leatherbery was Mike Glover's cousin and knew of him by the nickname, "Shaun T." Moreover, evidence showed that the victim knew the entire incident was instigated by Mike Glover. Following the attack, the victim gave the police Leatherbery's nickname and an accurate physical description of his assailant, including height, weight, hair and facial hair. Under such circumstances, we cannot find that the identification was against the weight of the evidence.

Leatherbery next contends that the trial court erred in failing to suppress the victim's in-court identification where the victim's out-of-court photo identification four days after the incident was unduly suggestive and violated his due process rights. Specifically, he claims that because the victim's in-court identification did not have any independent origin, the identification was not convincingly established.

"In reviewing the propriety of identification evidence, the central inquiry is whether, under the totality of the circumstances, the identification was reliable. Suggestiveness in the identification process is but one factor to be considered in determining the admissibility of such evidence and will not warrant exclusion absent other factors." **McElrath v. Commonwealth**, 592 A.2d 740, 742 (Pa. Super. 1991), citing **Commonwealth v. Sample**, 468 A.2d 799, 801 (Pa. Super. 1983). The following factors are to be considered

when determining the admissibility of identification evidence: (1) opportunity of witness to observe perpetrator at time of crime, (2) witness's degree of attention; (3) accuracy of witness's prior description of perpetrator; (4) level of certainty witness demonstrates at confrontation; and (5) time between crime and confrontation. *Commonwealth v. Carter*, 643 A.2d 61, 71 (Pa. 1994).

At the suppression hearing, the defense relied upon *Commonwealth v. Fowler*, 352 A.2d 17 (Pa. 1976), to argue that the identification procedure used by Detective Holman was unfair, particularly in light of the fact that the victim had never met Leatherbery before. In *Fowler*, our Supreme Court found that the trial court erred in suppressing identification evidence "that was the result of an impermissible suggestion arising from pre-lineup displays of photographs of the [defendant] and the line-up itself." *Id.* at 18. Specifically, the victim's daughter, who was present when her father's assailants shot him at point-blank range in their house, told the police what had happened at the scene of the crime and described one of the assailants as being "of slender build, nineteen to twenty-one years old, approximately six feet tall, clean shaven, with medium brown skin, wearing a dark suit, white shirt, small dark tie, dark straw hat and sunglasses." *Id.* at 23. During the following three months, the victim's daughter was repeatedly shown groups of photographs to determine whether she could identify anyone that was in her father's home at the time of the murder. She was shown hundreds of photographs, generally in groups of ten to

twenty. She identified the defendant several times, "h[olding] his photograph out" because although the defendant looked much older, he resembled the man she had seen on the day in question. *Id.* However, she never positively identified any of the photographs as being the man who was involved in the crime.

The victim's daughter was interviewed several more times over a three-month period, during which time she had a chance encounter with the defendant at a restaurant in New Jersey where she had gone with her mother and husband. The daughter heard the defendant say "that is the wife and daughter, and she doesn't recognize me." *Id.* at 24. The daughter wrote down the defendant's license plate number; however, she said nothing to her husband and mother about what she had heard in the restaurant until they later arrived in New York where she called the police and gave them the defendant's license plate number. Several weeks later, police showed the daughter another group of photographs, one of which was of the defendant. Again, the daughter failed to identify the defendant, stating that she could not give a positive identification unless she saw him in person. The following day, the police arrested the defendant and placed him in a line-up where the daughter said the defendant "looked like the same person I had seen but I would like to hear him speak." *Id.* All of the men in the line-up were asked to speak; after which, she positively identified the defendant as her father's assailant. *Id.*

On appeal, the Court considered the totality of the circumstances affecting the identification in the case, concluding that the process used was unnecessarily suggestive and that the prosecution failed to establish by clear and convincing evidence that the in-court identification had an "independent origin" in the daughter's observations at the time of the crime. Not only was the suggestiveness a result of the repeated display of the defendant's photograph, but it was also suggestive because his photograph stood out as a significantly different type of photo (full frontal view versus a mug shot). *Id.* at 24-25. The Court concluded that each of these factors "increases the danger, inherent in all photographic identification procedures, that the identification process will lead to a misidentification." *Id.* at 25.

The facts of *Fowler* are clearly distinguishable from the instant case. Here, the victim was able to view his assailants at the crime scene. Although it was dark and he was ultimately knocked unconscious as a result of the assault, the victim knew that the attack involved an issue involving Mike Glover, the defendant's cousin. The victim was able to give a rather detailed description of his assailants and also knew the nickname of the defendant. The police did not suggestively and repeatedly show the victim pictures of possible suspects. Rather, at the moment the officer pulled up Leatherbery's photo, the victim positively identified him as "Shaun T." Under these circumstances, we do not find that Detective Holman's identification process was such that the "likelihood of [such] misidentification

. . . violate[d the] defendant's right to due process[.] *Fowler*, 352 A.2d at 25, citing *Neil v. Biggers*, 409 U.S. 188, 198 (1972).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/10/2017